IN THE UNITED DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| C.F. BURGER CREAMERY CO., )<br>    A Michigan company, )<br>    Plaintiff )<br>     )<br>v. )<br>     )<br>DAVID L. FLORENCE, )<br>    An individual, )<br>    Defendant. )<br>_____) | Case No.: 2:20-cv-02936-.<br><br>Hon. Edmund A. Sargus, Jr. |

## CONSENT JUDGMENT AND PERMANENT INJUNCTION

The parties have agreed to the entry of this Consent Judgment and Permanent Injunction.

Accordingly, **IT IS ORDERED, ADJUDGED and DECREED:**

1. C.F. Burger Creamery Co. ("Plaintiff") is a Michigan corporation, with a principal place of business at 8101Greenfield, Detroit, Michigan, 48228.

2. David L. Florence ("Mr. Florence" or "Defendant") is an individual residing at 77 West Branch Road, Little Hocking, Ohio, 45742.

3. Plaintiff, with roots in Michigan since 1929, has sold a wide variety of dairy products under the well-known brand TWIN PINES FARM DAIRY (also known as "TWIN PINES"). Today, Plaintiff sells products under the TWIN

PINES brand to consumers throughout several states, including throughout Ohio and in West Virginia.

4. On March 17, 2020, the USPTO granted Plaintiff U.S. trademark registration 6012508 for the TWIN PINES logo, , which reflects the TWIN PINES mark. Together, the TWIN PINES mark, the various logos associated with Plaintiff over its 90-year history and the registered TWIN PINES logo are collectively referred to as the TWIN PINES Marks.

5. In October, 2019, Mr. Florence began selling dairy products, including bottled milk and drinkable yogurt, with the brand TWIN PINES DAIRY. He has an Ohio trade name registration dated September 9, 2019, for "TWIN PINES DAIRY," Document Number 201925204120.

6. Mr. Florence also owns the domain name, www.thetwinpinesdairy.com and an associated website, which bears the banner "WELCOME TO TWIN PINES DAIRY." The website promotes the milk and yogurt products and gives locations where the products can be purchased  In addition, the email address of Mr. Florence is twinpinesdairy18@gmail.com.

7. On July 30, 2019, Plaintiff applied for a USTM registration (Serial No. 88550770), for the word mark, TWIN PINES FARM DAIRY based on a date of first use of December 31, 1931, in International Class 29, for dairy products,

2

namely, cream, half and half, table cream, light cream, whipping cream, and non-alcoholic egg nog. Mr. Florence filed a Notice of Opposition against Serial No. 88550770, which is the now pending Opposition at the U.S. TTAB, Proceeding No. 91255551. There is currently on file at the TTAB a motion to suspend Proceeding No. 91255551, based on this action.

8. On June 5, 2020, Plaintiff initiated this proceeding, asserting that Mr. Florence's use in commerce of TWIN PINES DAIRY for dairy products similar to those offered by Plaintiff has caused, and if permitted to continue, is likely to continue to cause confusion in the marketplace.

9. Mr. Florence acknowledges that there has been actual confusion in the marketplace associated with the sales of his dairy products as compared to those of Plaintiff.

10. Mr. Florence acknowledges Plaintiff's prior rights in the TWIN PINES Marks and agrees never to challenge or oppose any use or registration by Plaintiff of the TWIN PINES Marks.

11. The parties have decided to settle this matter pursuant to this Consent Judgment and Permanent Injunction, with both parties agreeing not to appeal same.

<u>Accordingly, the parties agree to the following terms of this Consent Judgment:</u>

1. This Court has jurisdiction over the parties and the subject matter (trademarks) and venue is proper in this court and district.

2. The parties consent to this Consent Judgment as a final resolution of all claims and agree that the terms will be binding upon each party and their employees and associates.

IT IS HEREBY ORDERED that Mr. Florence, along with his employees and associates, hereafter, "Defendant," shall do as follows:

    A. On or before sixty (60) days from the date the Court approves of and enters this Judgment (the "phase-out period"), Defendant shall completely and permanently stop using the phrase or trademark TWIN PINES, whether alone or with other words, designs, or letters, including as part of a longer phrase (for example, TWIN PINES DAIRY FARM). This prohibition applies to labels, internal signage (for example, on refrigerated dairy cases or on retail shelves), external signage (for example, on delivery trucks, billboards, or on buildings), or on product packaging, such as milk, yogurt and cheese bottles, cartons, or other containers, or on or in any web sites, URLs, email addresses, such as [twinpinesdairy18@gmail.com](mailto:twinpinesdairy18@gmail.com), electronic advertisements, such as on Google ads, or television, radio, or

4

        print advertisements, such as on flyers, coupons, advertising circulars and the like, and on metadata, or hashtags.

B.    By the end of the phase-out period Defendant shall stop using the TWIN PINES Marks, as defined above, and shall never use any of the logos that Plaintiff has used in connection with the sale of products or services over the last ninety years, or confusingly similar variations thereof.

C.    By the end of the phase-out period Defendant shall permanently stop using TWIN PINES as part of the name of his dairy business. He will also change his trade name with the Ohio Secretary of State.

D.    By the conclusion of the phase-out period, Defendant shall take all reasonable and necessary action so that Defendant's "TWIN PINES" will no longer appear in or on any such websites, public records, accounts, newspapers, or other periodicals, or on any materials or platforms. Among other things, to the extent he uses TWIN PINES as a keyword, @TwinPines as a Twitter® handle or in any other capacity, he should change those as well. Thus, for example, Defendant must change any and all social media to remove TWIN PINES therefrom, including, without

limitation, and as applicable, LinkedIn.com, Facebook, Instagram and Craigslist, whitepages.com and yellowpages.com, in ads in local newspapers and other periodicals, on all ratings or review platforms, such as Yelp and Google Maps, on job posting/review platforms, such as indeed.com, and on print and electronic promotional materials. Defendant shall continue good faith monitoring and follow up as necessary to comply with this provision even after the conclusion of the phase-out period.

E. As for Facebook®, Defendant recognizes that, although he will need to delete TWIN PINES from his Facebook page, he would like to maintain the positive comments thereon relating to his dairy products. What he proposes to do is change the name on his TWIN PINES Facebook page to a new name if Facebook allows it, so that the customer feedback remains and to make it clear that he has adopted a new name for the same product. If Facebook declines to cooperate, then the Facebook page will need to be taken down by the conclusion of the phase-out period.

6

F. Further, if Defendant is contacted by customers interested in purchasing his products, he may indicate that he is no longer using the Twin Pines brand name and may indicate the new brand name and website.

G. While this judgment is a matter of public record, Mr. Florence shall not volunteer the financial terms of Par. 8 hereof, or that Plaintiff is providing monetary compensation to him to assist with the required phase-out.

H. Defendant will stipulate in writing with Plaintiff to a dismissal with prejudice of Proceeding No. 91255551, his Opposition at the TTAB. Fishman Stewart will facilitate preparation and filing of the dismissal with prejudice.

I. The term, "Subject Domain Name" shall refer to Defendant's domain name, www.thetwinpinesdairy.com. Within sixty (60) business days after the Court's entry of this Consent Judgment, Defendant shall:

    (i) Acquire a domain name that does not conflict with the terms of this Agreement;

(ii) Transfer all web content and data from the Subject Domain Name to the new domain referenced in (i) above;

(iii) Complete transfer and/or removal of all web content and data from the Subject Domain Name; and

(iv) If he wishes to do so, in advance of the conclusion of the phase-out period, advise all visitors to the Subject Domain Name of the planned termination of the existing web site and provide the new web site address they should visit in its place.

(v) Defendant shall, in good faith, work with Fishman Stewart to complete the transfer of the Subject Domain Name to Fishman Stewart's GoDaddy account ([domains@fishstewip.com](mailto:domains@fishstewip.com)) before the conclusion of the 60 days; *in other words,* Mr. Florence needs to take the necessary actions and provide the necessary information and documents to transfer the Subject Domain Name, including, initiating the transfer, unlocking the Subject

8

        Domain Name and providing the transfer code to Fishman Stewart.

J.    Any new mark or logo adopted by Defendant may be submitted to Plaintiff's counsel Fishman Stewart for approval prior to adoption in order that counsel and Plaintiff may make a reasonable determination that such logo is sufficiently distinct from the TWIN PINES Marks.

K.    Neither party shall denigrate or otherwise discredit the other party or the quality of the other party's goods or services.

L.    To demonstrate Plaintiff's good faith and to support Defendant's efforts to make the foregoing changes, Plaintiff will pay Defendant a total of $8,000.00 in accordance with the following schedule: After the Court enters this Consent Judgment, Plaintiff shall transfer to Defendant's account $1,000.00. After the United States Patent and Trademark Office enters the dismissal of TTAB Opposition No. 91255551, Plaintiff will transfer to Defendant's account an additional $2,000.000. If Defendant chooses to send Plaintiff notice of its new name and it is approved, Plaintiff will transfer to Defendant another $1,000.00. After Defendant completes the

9

transfer of his domain name, including unlocking the Subject Domain Name and providing the transfer codes to Fishman Stewart, Plaintiff will transfer an additional $1,000.00. At the conclusion of the sixty days, once Plaintiff satisfies itself that all these terms are met, Plaintiff will transfer the balance of the promised amount so that Defendant will have received the full $8,000.00.

M. If, following the conclusion of the sixty days, Plaintiff becomes aware of any continued uses by Defendant of any of the TWIN PINES Marks or associated logos, or other violation of these terms, Plaintiff will give Defendant written notice of such violations by delivery to Defendant's address above and Defendant promises to address and cure any such violation within five days of receiving notice. If Defendant is unable to cure the use within five business days, he must provide Plaintiff with a valid reason supporting such inability to cure. At that point the parties shall attempt to arrive at a resolution of the issue. If Defendant fails to provide Plaintiff with a valid reason supporting his inability to cure, he will be liable for liquidated damages in the amount of $7,000. More than three such

    failures will subject Defendant to liquidated damages in the amount of $100,000.00.

  N. Subject to the terms herein, each party shall bear its or his own costs and attorney fees in connection with this proceeding, the opposition, and this Agreement.

3. The terms of the permanent injunction set forth in Paragraphs A-N are intended to be a final resolution of any and all claims Plaintiff has asserted against Defendant and shall be binding on the Parties' successors and assigns.

4. This Court shall retain jurisdiction over this Consent Judgment in order to enforce it.

  SO ORDERED this ____ day of _____, 2020.

            _____
            U.S. District Judge Hon. Edmund A. Sargus, Jr.

Approved as to Form and Content:

C.F. BURGER CREAMERY CO.

By: /s/ _____
Authorized Representative
6/26/2020

DAVID L. FLORENCE

By: _____
6-26-20

12